No. 19,246.

FRANK Z. PIPER, ET AL. *v.* JOSEPH H. MAYER, ET AL.

(360 P. [2d] 433)

Decided February 6, 1961.   Rehearing denied March 6, 1961.

Mr. EDWARD A. JERSIN, for plaintiffs in error.

Messrs. WOOD, RIS & HAMES, Mr. STEPHEN E. CONNOR, for defendants in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THE parties will be referred to as they appeared in the trial court where plaintiffs in error were plaintiffs. Review is sought of a judgment based on a jury verdict in favor of the defendants and against plaintiffs.

The plaintiffs instituted the action seeking to recover for personal injuries and property damage growing out of an automobile accident which occurred on the Clear Creek Canyon road 3½ miles west of Golden, Colorado. On the day of the accident, March 16, 1958, at about 6:20 P.M., plaintiffs were traveling in an easterly direction on the mentioned highway toward Denver and had reached the point near Golden when Sampson's automobile, in which they were traveling, unexpectedly stalled. Plaintiffs pushed the car out of the lane of travel and the plaintiff Piper raised the hood and was, at the time of the impact, looking at the motor. Plaintiff Sampson was standing in front of the car when the impact occurred. Suddenly looking up, he saw the defendants' vehicle rounding a curve some 300 feet west of the point

where the vehicle was stalled. As the defendants' car rounded the curve it spun out of control on the icy highway, and through the efforts of defendant Mayer to straighten it out, moved through a right arc into a skid and its left side slid into the stalled vehicle, striking the left rear of the plaintiffs' car. The point of impact of the defendants' vehicle was at its left door. Plaintiffs' car had been stopped about 5 minutes when the collision occurred.

The testimony concerning the speed of the defendants' car just prior to the loss of control varied somewhat. One version was that the speed was from 30 to 35 miles per hour. However, a patrolman who came on the scene immediately afterward was told by Mayer that he was traveling between 40 and 45 miles per hour. It is undisputed that snow had been falling for several hours, that a considerable quantity had accumulated and that the highway was hard packed and slick.

There is dispute as to the exact position of plaintiffs' vehicle at the side of the highway, although it was undisputed that plaintiffs had pushed the vehicle in an attempt to get it out of the lane of travel. According to the plaintiffs, they had pushed it to a point on the shoulder of the road some 8 feet from the blacktop portion. The defendants, however, testified that the car was actually in the travel lane. The patrolman offered an opinion as to the point of impact. He fixed it at the extreme edge of the highway. He said that the left wheels of the plaintiffs' car were on the outer edge of the blacktop. The defendants' view of the vehicle's position was derived from a quick look as their vehicle was moving toward the stalled car. At the time and place of the collision the entire highway, including the shoulders, was covered with snow.

There is no dispute but that some lights of the stalled vehicle were burning, the defendants having admitted seeing its rear light as they rounded the curve, and that at least one tail light was burning after the impact.

The issues submitted to the jury were negligence and contributory negligence, and the court read several statutes to the jury having to do with parking on the highway. Instructions were also submitted on unavoidable accident and emergency.

In urging reversal, the plaintiffs contend:

1. That the trial court erred in submitting to the jury the question of unavoidable accident; that assuming such instruction is at times appropriate, it is not applicable where the facts are such that the accident is shown to have been caused by defendants' negligence; that under no circumstances should the jury have been instructed to consider negligence, unavoidable accident and emergency; that the submission of all such issues unduly favored the defendants and was prejudicial to the plaintiffs.

2. That it was error to instruct the jury with respect to the numerous statutes relating to parking on the highway, giving rise to the possible inference that the plaintiffs were guilty of some negligence, the statutes in each instance being inapplicable.

I.

Instruction No. 7, defining unavoidable accident, reads:

"An unavoidable accident is one happening suddenly and unexpectedly and without negligence on the part of anyone."

The jury was also told that if it found from the evidence that the accident was unavoidable, then none of the parties was entitled to damages. It is argued that the instructions tended to create in the mind of the jury the impression that apart from the presence or absence of fault an independent reason existed for denying a recovery where the accident occurred suddenly. The question is whether the instruction as given applied to the fact situation as disclosed by this record.

The definition of unavoidable accident as found in our decisions describes it as:

"Such an occurrence, as under all the circumstances,

could not have been foreseen, anticipated, or avoided in the exercise of ordinary care."

*Stephens v. Lung,* 133 Colo. 560, 565, 298 P. (2d) 960. See also *McBride v. Woods,* 124 Colo. 384, 238 P. (2d) 183; *Iacino v. Brown,* 121 Colo. 450, 217 P. (2d) 266; *Herdt v. Darbin,* 126 Colo. 355, 249 P. (2d) 822. A substantially similar definition appears in Prosser, *Torts,* 117. The emphasis upon the unforeseeable or unpreventable character of the occurrence would indicate that the criterion for application of unavoidable accident is lack of negligence or fault on the part of any of the persons involved. It is clear, however, from a study of the cases that it has been restricted in its application to a particular type of case. See *McBride v. Woods,* supra; *Iacino v. Brown,* supra; *Herdt v. Darbin,* supra; *Jacobsen v. McGinness,* 135 Colo. 357, 311 P. (2d) 696; *Goll v. Fowler,* 124 Colo. 404, 238 P. (2d) 187; *Mobley v. Cartwright,* 141 Colo. 413, 348 P. (2d) 379; *Eddy v. McAninch,* 141 Colo. 223, 347 P. (2d) 499; *Parker v. Couch,* No. 18,629 (Dec. 30, 1960), and 10C *Cyclopedia of Automobile Law and Practice,* Sec. 6698.

■ An example of the limited usefulness of the unavoidable accident doctrine appears in *McBride v. Woods,* supra. There the trial court had given such instruction in connection with an automobile-pedestrian injury. The defendant had backed his car from a diagonal parking place into the path of a pedestrian who was in the act of crossing the street and who was unaware that the car was moving. Defendant tendered the instruction on the theory that he had a limited rear view and that the duty was on the pedestrian to discover the threat and to avoid the impact. The court rejected this argument and held that it was inapplicable because the defendant could have anticipated or foreseen the happening. The court concluded:

"It follows, therefore, that from the facts and circumstances surrounding this case, no showing whatever was

made justifying the submission of the question of unavoidable accident to the jury."

In *Jacobsen v. McGinness,* supra, the rule was held inapplicable where defendant inadvertently drove to the left side of the highway and collided with an oncoming car. She claimed that the collision was unavoidable because she lost visibility in a cloud of dust created by an oil truck which she was following. The Court there held that the instruction was erroneous and added:

" * * * it tended not only to divert the minds of the jurors from the decisive issues of negligence and contributory negligence, but suggested that under the evidence parties might be held blameless for reasons other than their freedom from negligence or contributory negligence."

*Herdt v. Darbin,* supra, held it to be reversible error to so instruct the jury in an intersection accident case. Full visibility existed and on this basis the Court ruled that:

" * * * a collision of the two cars is not such an occurrence as could not have been foreseen, anticipated or avoided in the exercise of ordinary care."

*Eddy v. McAninch,* supra, on the other hand, was the type of fact situation where the doctrine is appropriate. In that case there was an unforeseeable brake failure, and in *Parker v. Couch,* supra, the defendant was required to stop because of zero visibility created by a dust storm. See also *Dillon v. Sterling Works,* 106 Colo. 407, 106 P. (2d) 358. Unlike *Eddy* and *Parker,* the instant case does not have in it the factor of an unforeseeable and uncontrollable happening as the cause of the injury. It is undisputed that defendant lost control of his vehicle. Whether this occurred three hundred feet from the point of collision or two hundred feet (according to defendants' version) is a matter of dispute. In either event, it cannot be said that such loss of control was attributable to a sudden and unforeseeable event. The evidence established that the icy, hard-packed condition

of the roads was general and not merely local, therefore, the probability of defendants' car getting out of control was not unforeseeable. The factual issue in the case was whether defendant Mayer could have avoided loss of control of the vehicle by the exercise of reasonable care, thus presenting the issue of his negligence.

This principle is pointedly illustrated in the case of *State for the use of Whitaker v. Greaves,* 191 Md. 712, 62 A. (2d) 630. As in this case, the accident occurred when defendants' car skidded out of control on a mountain road, the dangerous condition of which was readily apparent to the defendant. The trial court told the jury that it was to decide whether the accident "was due to negligence or whether it was unavoidable under all the facts in this particular case." The Court held that the issue of unavoidable accident was not properly in the case. It said:

" * * * The learned court did not look behind the skidding to what caused it. Mere skidding is not evidence of an unavoidable accident. In this case the facts do not tend to show that the appellee had his car under such control as was required of him under the conditions under which he was traveling. Perhaps there was nothing the appellee could do when his car started to skid, but there is nothing to show that the car would have skidded had he obeyed the sign at the top of the mountain and kept his car in second gear all the way down. Unless there is something in the evidence showing that this accident could not have been foreseen and prevented by vigilant care and attention an unavoidable accident prayer would lead to mere speculation.

\* \* \*

"This undisputed testimony does not give rise to any inference that the accident could not have been avoided by care exercised before the slushy place was reached. The jury should not have been allowed to guess about it. * * * "

See also *Hunt v. Whitlock's Administrator,* 259 Ky.

286, 82 S.W. (2d) 364; *Hennessey v. Burlington Transportation Co.,* 103 F. Supp. 660.

There is evidence that defendants were driving at an unreasonable rate of speed in view of the road conditions. At the trial the defendants testified to facts from which it was possible to infer that the speed might have been reasonable. The jury should have been permitted to resolve this conflict free of the confusion resulting from submission of a theory of law leading to the conclusion that plaintiffs might not be permitted to recover irrespective of the negligence or non-negligence of the defendants. Had the defendants come upon the ice unexpectedly, without reason to believe that such road conditions existed, then it could be contended with some degree of validity that the facts justified submission of an instruction on unavoidable accident.

## II.

The trial court's instructions included numerous statutory provisions pertaining to parking and required lights on the highway. C.R.S. 1953, 13-4-72, 79, 87, 88, 89 and 92, were set forth in Instruction No. 12. The jury was also told that if it found that any of these provisions had been violated and the violation was the proximate cause of the injury that such violation constituted negligence *per se.* In evaluating the propriety of this instruction, we note that the undisputed evidence shows that plaintiffs' vehicle became disabled through no fault of plaintiffs and that some of the vehicle's lights were on and were seen by defendants as they rounded the curve some distance west of the vehicle of the plaintiffs. There is no evidence in the record to establish that plaintiffs failed to provide the statutory twenty feet passage on the highway, 13-4-72, supra, or that inadequate passageway had anything to do with the ultimate happening. Moreover, the apparent legal cause of the accident was the defendants' loss of control. In the light of these factors, it is impossible, in the present state of the record, to find evidence suggesting that statutory violations by

the defendants constituted the proximate cause of the collision. *Denver-Los Angeles Trucking Company v. Ward,* 114 Colo. 348, 164 P. (2d) 730; *Hertz Driv-Ur-Self System, Inc. v. Hendrickson,* 109 Colo. 1, 121 P. (2d) 483.

Apart from the statutes, it is impossible to conclude from the evidence now before us that fault on the part of the plaintiffs contributed to the ultimate happening. What was it possible for plaintiffs to do in anticipation of loss of control of the vehicle by defendants? They were not required to anticipate a skid and it would have been virtually impossible to have taken precautions to avoid being struck if they had anticipated the happening. Certainly their mere presence, even though it may have triggered the skid, could not be regarded in law as a responsible factor. In *Stephens v. Lung,* supra, the Court declared:

"Where there is no basis in fact for a finding of contributory negligence, it is error to instruct on the subject and thereby submit to the jury an issue which is outside the evidence. *Ankeny v. Talbot,* 126 Colo. 313, 250 P. 2d 1019."

And in *Jacobsen v. McGinness,* supra, the Court cited the *Stephens* case and further commented that to hold:

" * * * in such circumstances Jacobsen was contributorily negligent would be to say that he should not have been on that road at that time in the morning, or better still, should have stayed at home."

See also *Iacino v. Brown,* supra. Cf. *Independent Lumber Co. v. Leatherwood,* 102 Colo. 460, 79 P. (2d) 1052, and *Pueblo Transportation v. Moylan,* 123 Colo. 207, 226 P. (2d) 806. Although these latter decisions involved the last clear chance doctrine, they furnish a comparative basis for the present decision in that in each case the conflict is between an allegedly negligent active force against a passive condition which is in each instance held to be a remote "cause." *Dillon v. Sterling Works,* supra, is not authority in support of the present question being one of fact because there the presence of

plaintiff's vehicle in the traveled lane was significant as a causative factor. In the case at bar it cannot be so regarded.

■ Thus we must conclude from the evidence adduced at the trial that the conduct of the plaintiffs was remote from or unrelated in law to the collision. Abstract violations, whether statutory or arising independently of statute, which do not possess essential legal relevancy, can only serve to confuse the jury. It follows that in the light of the present record it was error to instruct the jury on contributory negligence and to submit statutes which raise such issues.

Since the case must be retried, the defendants are not foreclosed from offering further or different evidence which may possibly shed light on the contention that plaintiffs' conduct was a contributing factor in law. If the showing at a second trial adds nothing new, the issue of contributory negligence must be eliminated. Furthermore, defendants shall not be precluded from contending that the accident resulted from a sudden emergency which arose in spite of the reasonableness of their antecedent driving. An instruction on such a theory would also be relevant.

The judgment is reversed and the cause is remanded with directions to grant a new trial.

MR. JUSTICE SUTTON did not participate.